538

UNITED STATES, Appellee,

v.

Joshua J. ORZECHOWSKI, Lance
Corporal (E–3), U.S. Marine
Corps, Appellant.

NMCCA 200300711.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

15 Nov. 2006.

---

**ORDER**

Before the court is the appellant's Petition for an Extraordinary Writ in the Nature of a Writ of Habeas Corpus, alleging a violation of Article I, Section 9, Clause 3 of the United States Constitution. Specifically, it alleges an *ex post facto* application of good conduct time credits, based on a Navy regulation enacted after his offenses and after his original trial that illegally increased his time in confinement. For the reasons set forth below, the petition is granted.

**Background**

The underlying facts are not in dispute. On 28 November 2001, the petitioner was convicted by a military judge sitting as a general court-martial, in accordance with his pleas, of disobeying a lawful order, operating a vehicle while drunk, involuntary manslaughter, and three specifications of aggravated assault, in violation of Articles 92, 111, 119, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 911, 919, and 928. These crimes were committed in the 28 February 2001 to 22 April 2001 time period. A panel of officer members sentenced the petitioner to confinement for 15 years, total forfeitures, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the adjudged sentence on 5 October 2002, but suspended all confinement in excess of 13 years.

On 17 September 2004, the Under Secretary of Defense issued a memorandum to the various service Secretaries regarding new changes in policy pertaining to abatement of sentence to confinement that were to take effect 1 October 2004. The new policy was laid out in an attachment titled "Abatement of Sentences to Confinement." Paragraph A2.2.1 changed the award of good conduct time (GCT) to 5 days per month for all sentences. However the next paragraph, ¶ A2.2.2, states: "With respect to sentences adjudged prior to January 1, 2005, GCT shall be awarded at the rates specified in DoD Instruction 1325.7, enclosure 26." Paragraph A2.3.2 states: "If a sentence is later reduced by the convening authority, as a result of appellate action, or due to a grant of clemency, the prisoner's release date shall be recomputed based on the new sentence." The new policy does not state whether the old rules or the new rules for GCT should be applied when the original sentence was adjudged prior to 1 January 2005 and the reduced sentence was adjudged after that date.

On 18 January 2005, this court affirmed the petitioner's conviction, but set aside his sentence after finding that the Government had breached the pretrial agreement in the case. We authorized a rehearing on sen-

tence that comported with the pretrial agreement. *United States v. Orzechowski*, No. 200300711, 2005 WL 94504 (N.M.Ct.Crim. App. 18 Jan. 2005). Pursuant to our decision, after rehearing by a military judge alone, the petitioner was re-sentenced on 8 July 2005 to confinement for 10 years, reduction to pay grade E–1, and a dishonorable discharge. Pursuant to an addendum to the original pretrial agreement, on 5 February 2006, the convening authority approved the new sentence as adjudged, but suspended all confinement in excess of 8 years.

On 3 January 2006, the Department of Navy Corrections Manual was amended. SECNAVINST 1640.9C. The amendments generally effectuated the 2004 change in Department of Defense policy discussed above. However, there are a few unexplained differences. The amended Corrections Manual at ¶ 9101 indicates that "[s]entences to confinement adjudged on or after 27 July 2004 shall be computed per the procedures [in the new DoD policy]," but that "[m]embers whose sentences were adjudged before 27 July 2004 shall be governed by the instructions in place at the time the sentences were adjudged." The amended Corrections Manual further states, at ¶ 9201.1.b:

(1) Because prisoners may fall under different GCT rates, the GCT rates shall be consistent with DOD policy on GCT rate of earning applicable at the time a sentence was adjudged.

(2) Prisoners adjudged prior to 1 January 2005 shall be awarded GCT at the rates specified in reference (s) and SECNAVINST 1640.9B.

(3) For prisoners adjudged prior to 1 January 2005, GCT shall be awarded at a rate of 5 days for each month of confinement, and 1 day for each 6–day portion of a month (see appendix 4 of DOD 1325.7–M), regardless of sentence or multiple sentence length. GCT is directly associated with the sentence to confinement and shall not exceed what the sentence or multiple sentence allows for.

Under SECNAVINST 1640.9B, if an approved sentence included greater than 10 years confinement, GCT would accrue at the rate of 10 days per month. For sentences between 5 and 8 years, the GCT accrual rate was 8 days per month.

The United States Disciplinary Barracks has calculated the petitioner's GCT for the period after his 8 July 2005 sentence rehearing at the rate of 5 days per month, rather than 8 days per month. At the 5 day per month rate, when combined with earned time credits, the petitioner is scheduled to be released from confinement on 11 November 2006. If the petitioner's GCT had been calculated at the rate of 8 days per month for the period served after his sentence rehearing, he would have been released on 28 August 2006.

The petitioner has exhausted his administrative remedies in his attempt to resolve this issue.

### Discussion

The petitioner argues that the application of the new, less generous GCT provisions to his post-rehearing confinement violates the Constitution's prohibition against *ex post facto* laws. U.S. Const. art. I, § 9, cl. 3. We agree.

The Supreme Court addressed post-sentencing changes to formulas for calculating GCT in *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). In *Weaver*, the Court considered whether a Florida statute altering the availability of "gain time for good conduct" was unconstitutional as an *ex post facto* law when applied to the petitioner, whose crime was committed before the statute was enacted. The crime, conviction, and sentencing all occurred in 1976. *Id.* at 25, 101 S.Ct. 960. In 1978, the Florida legislature passed a statute providing for a new, less generous formula for monthly gain-time deductions. The new provision was implemented in 1979. After that date, Florida applied it to all prisoners, including those sentenced for crimes committed before 1979. *Id.* at 26–27, 101 S.Ct. 960. The Court noted "that two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29, 101 S.Ct. 960. The Court emphasized that it is "the

lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated" that is critical to relief under the *Ex Post Facto* Clause, not a person's right to less punishment. Because the new Florida statute applied to prisoners convicted for *acts* committed before the statute's effective date, the statute was *ex post facto* in its effect. It attached legal consequences to a crime committed before the law took effect. *Id.* at 31, 101 S.Ct. 960 (emphasis added). The Court found the new Florida statute was void as applied to the petitioner. *Id.* at 36, 101 S.Ct. 960.

The Court in *Weaver* pointed out that "the critical question ... is whether the new provision imposes greater punishment after the commission of the offense, not merely whether it increases a criminal sentence." *Id.* at 32 n. 17, 101 S.Ct. 960. In this case, as did the Supreme Court in *Weaver*, we conclude that the new GCT rules are disadvantageous to petitioner. On its face, the new instruction reduces the number of GCT days available to a prisoner who abides by prison rules and adequately performs his assigned tasks. "By definition, this reduction in [GCT] lengthens the period that someone in petitioner's position must spend in prison." *Id.* at 33, 101 S.Ct. 960. The new rules were clearly harsher in their effect on the petitioner, they increased the time he spent in prison, and were promulgated years after his offenses were committed. Application of the new rules to the petitioner violates the *ex post facto* clause of the United States Constitution. *See also Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997)(revocation of provisional early release credits which were not even created when the petitioner had been sentenced); *Hunter v. Ayers*, 336 F.3d 1007 (9th Cir.2003)(recovery of good time lost through bad behavior).[1]

The Government argues that an *ex post facto* analysis is inappropriate because the mechanism for increasing the petitioner's prison time was a regulation, not a statute. It offers no direct authority for its position, and the one case it did cite, *United States v. Spaustat*, 57 M.J. 256 (C.A.A.F.2002), did not involve *ex post facto* statutes or regulations. On the other hand, *Spaustat* did confirm that the proper mechanism for judicial review of disputes about GCT is an application for an extraordinary writ. *Id.* at 263.

The relevant authorities lead to a conclusion contrary to the Government's contention. Where a governmental body has statutory authority to adopt rules or issue regulations, an *ex post facto* analysis is appropriate. *Himes v. Thompson*, 336 F.3d 848 (9th Cir.2003); *Rodriguez v. United States Parole Commission*, 594 F.2d 170 (7th Cir.1979); *Love v. Fitzharris*, 460 F.2d 382 (9th Cir.1972). An agency regulation which is legislative in nature is encompassed in the *ex post facto* prohibition—a legislative body cannot escape the Constitutional constraints on its power by delegating its lawmaking function to an agency. *Smith v. Scott*, 223 F.3d 1191, 1193–94 (10th Cir.2000). Applying this precedent to the petitioner's case, we note that SECNAVINST 1640.9C itself cites 10 U.S.C., Chap. 48 as authority for the Department of the Navy Corrections Manual. *Id.* at ¶ 1101. Within that chapter, 10 U.S.C. § 951 empowers the military Secretaries to establish military correctional facilities for confinement of those who violate the U.C.M.J., and to prescribe regulations such as the Navy Corrections Manual. This chapter also specifically permits the Secretaries to provide a system of parole. 10 U.S.C. § 952. We find that the Department of Defense's and the Navy's rules for GCT are subject to *ex post facto* analysis,

---

1. The Government did not discuss *Weaver* in its brief, citing instead two other Supreme Court cases: *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) and *California Department of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). These two cases, along with a later case, *Garner v. Jones*, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000), do not overrule or limit the *Weaver* decision in any way. *Collins* involved a correction of a sentence, which did not increase the petitioner's prison time. The other two cases involved changes in the timing of parole hearings. All three stand for the proposition that *ex post facto* relief is not warranted where any possible detriment to a petitioner is merely speculative. In this case, as in *Weaver*, the detriment is clear and actual.

notwithstanding the fact that they appear in authorized regulations vice statutes.

Additionally, even if we were to find as a general matter that new regulations could be applied after rehearing on sentence, despite the clear prohibition on doing so discussed above, it would be unfair and inappropriate to do so in this case. The new SECNAVINST 1640.9C was promulgated on 3 January 2006. The DoD policy memorandum by its own terms would not apply to any sentences adjudged prior to 1 January 2005. The record is barren as to why it took well over 3 years after the petitioner's original trial to this court's decision on 18 January 2005—less than three weeks after the effective date of the DoD policy memorandum. This is important because had the decision been prior to 1 January 2005, under the new DoD policy, the old rules would have applied. Likewise, no explanation is apparent for the further delay of 6 months to the petitioner's rehearing on sentence, or the still further delay of 6 months for a new convening authority's action. Under these circumstances, it would be unfair to penalize the petitioner for the Government's post-trial delay. In any event, all pertinent events took place prior to the promulgation of SECNAVINST 1640.9C, which we have held cannot be applied in this case.

## Conclusion

Upon consideration of the Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus, the Government's Response to Court Order to Show Cause, the Reply to Respondent's Answer to Petitioner's Petition for Writ of Habeas Corpus, the documents attached to the pleadings, the record of trial, and the cited regulations and applicable statutes, it is, by the Court, this 21st day of September 2006,

## ORDERED

(1) That the Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus is granted.

(2) That the petitioner will be immediately released from confinement.