# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM S32463

_____

### UNITED STATES
*Appellee*

**v.**

### Landon M. PARRIS
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 14 August 2018

_____

*Military Judge:* James R. Dorman.

*Approved sentence:* Bad-conduct discharge, confinement for 180 days, and reduction to E-1. Sentence adjudged 25 January 2017 by SpCM convened at Dyess Air Force Base, Texas.

*For Appellant:* Major Melissa Biedermann, USAF; Major Patricia Encarnación Miranda, USAF.

*For Appellee:* Lieutenant Colonel G. Matt Osborn, USAF; Lieutenant Colonel Joseph J. Kubler, USAF; Mary Ellen Payne, Esquire.

Before HARDING, HUYGEN, and POSCH, *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the court, in which Judges HUYGEN and POSCH joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

_____

HARDING, Senior Judge:

In accordance with his pleas made pursuant to a pretrial agreement (PTA), Appellant was found guilty of three specifications of wrongful use of methamphetamine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 210 days, and reduction to the grade of E-1. In accordance with the limitation of the PTA, the convening authority approved only 180 days of confinement but otherwise approved the adjudged sentence. Appellant had 246 days of pretrial confinement credit—a result of 87 days spent in pretrial confinement and 159 days of credit awarded for illegal pretrial confinement in violation of Article 13, UCMJ, 10 U.S.C. § 813. Of those 246 days, 180 were credited against the sentence to confinement, but the record does not show that either the military judge or the convening authority considered whether the excess credit of 66 days should be applied against another aspect of the adjudged sentence to ensure meaningful relief for the illegal pretrial confinement. Additionally, the convening authority denied Appellant's request to defer the reduction in grade until the date of action. Other than the deferment request, Appellant did not request clemency.

Appellant asserts two matters on appeal: (1) Appellant was denied meaningful relief for 66 days of illegal pretrial confinement credit in excess of his approved sentence to confinement that should have been applied against another component of the adjudged sentence, specifically, the bad-conduct discharge and (2) Appellant was denied a meaningful opportunity for clemency when the staff judge advocate's recommendation contained a number of errors. While we decline to set aside the bad-conduct discharge as requested by Appellant, we do set aside the reduction in grade to E-1 to provide meaningful relief for the violations of Article 13, UCMJ, in this case. We find no other prejudicial error and affirm.

## I. BACKGROUND

On 31 October 2016, Appellant was placed in pretrial confinement at a civilian facility in Abilene, Texas. In accordance with Air Force policy at the time,[2] Appellant was classified as a maximum custody confinee upon entry

---

[1] Appellant pleaded and was found not guilty of conspiracy to wrongfully distribute methamphetamine in violation of Article 81, UCMJ, 10 U.S.C. § 881.

[2] Air Force Instruction (AFI) 31-105, *Air Force Corrections System,* ¶ 5.3 (15 Jun. 2015), provided that "pretrial detainees [were] automatically classified as maximum

*(Footnote continues on next page)*

and remained in that custody classification until the announcement of his sentence and release from confinement on 25 January 2017. Under this same Air Force policy, Appellant's confinement custody classification was never re-evaluated while he was in *pretrial* confinement. Had Appellant been a *post-trial* confinee, individualized reconsideration of Appellant's maximum custody classification would have occurred. The Dyess Air Force Base confinement officer opined that, but for the mandatory maximum custody provisions of the governing Air Force regulation with respect to custody classifications of pretrial confinees, application of the individualized criteria would have resulted in Appellant's classification as minimum custody for the duration of his pretrial confinement. By virtue of being classified as maximum custody, Appellant was required to be handcuffed, shackled, and escorted by guards while he was outside of his cell. Appellant was kept in segregation 24 hours a day, wore an orange jumpsuit, and ate his meals in his cell. Appellant was permitted to leave his cell for just one hour after midnight each day.

In addition to the maximum custody classification, a disruption in Appellant's pay while he was confined caused financial hardship for Appellant. Specifically, Appellant's pay and allowances were improperly withheld for a period of six weeks. The pay issue was eventually corrected in part while Appellant was still in pretrial confinement, and Appellant received his base pay and basic allowance for housing. However, he did not receive basic allowance for subsistence from 15 November 2016 to 25 January 2017.

Appellant's trial defense counsel made a motion for appropriate relief for illegal pretrial punishment alleging the maximum custody classification of Appellant and lack of pay, *inter alia*, violated Article 13, UCMJ. After reviewing the conditions of Appellant's pretrial confinement, the military judge found "the restrictions imposed upon [Appellant were] more rigorous than necessary under the circumstances, and [were] sufficiently egregious as to constitute illegal pretrial punishment." Although the military judge did not find there was an intent to punish Appellant, the military judge also concluded the withholding of Appellant's basic allowance for subsistence was improper. As a result of these violations, the military judge awarded Appellant

---

custody classification." This policy changed as of 26 April 2018. Currently, during the first 72 hours or first duty (whichever is later), also referred to as an acclimation period, pretrial detainees are classified as maximum custody. Within 24 hours following completion of an acclimation period, all facts and circumstances in making an appropriate custody classification are considered, and reclassification review is to be completed within one duty day of receipt of a completed mental health evaluation post-acclimation. AFI 31-105 AFGM 2018-01, ¶ 5.4.5.1 (26 Apr. 2018).

72 days of confinement credit for the withholding of pay or allowances and 87 days for the unnecessarily rigorous conditions—one for each day Appellant was held in maximum custody. In total, Appellant received 246 days of pretrial confinement credit at the time his sentence was adjudged—87 days for actual time spent in pretrial confinement, 87 days for the unnecessarily severe conditions of his pretrial confinement, and 72 days for the improper withholding of basic allowance for subsistence.

## II. DISCUSSION

### A. Meaningful Relief for Violation of Article 13, UCMJ

Appellant asserts this court should set aside the bad-conduct discharge to remedy the Article 13, UCMJ, violations in this case. We decline to do so and instead grant meaningful relief and set aside the reduction in grade to E-1.

"The proper application of credit for illegal pretrial punishment . . . [is a] question[ ] of law, reviewed de novo." *United States v. Spaustat,* 57 M.J. 256, 260 (C.A.A.F. 2002) (citations omitted). The Court of Appeals for the Armed Forces (CAAF)

> [has not] interpreted R.C.M. 305(k) as exclusively delimiting the form of relief lawfully available for violations of Article 13, UCMJ.
>
> . . . Article 13, UCMJ, relief can range from dismissal of the charges, to confinement credit or to the setting aside of a punitive discharge. Where relief is available, meaningful relief must be given for violations of Article 13, UCMJ. However, relief is not warranted or required where it would be disproportionate to the harm suffered or the nature of the offense.

*United States v. Zarbatany*, 70 M.J. 169, 170 (C.A.A.F. 2011).

While the conditions of Appellant's pretrial confinement were unnecessarily severe and the pay errors unnecessary and harmful, there was not an intent to punish him. We considered the adjudged and approved bad-conduct discharge, and we find it wholly appropriate for the offenses committed by Appellant. His multiple drug use offenses justify the bad-conduct discharge. While we do not condone the arbitrary imposition of a regulation dictating maximum custody for an Airman who, if individually considered, would have been held in minimum custody, relief in the form of setting aside the punitive discharge would be disproportionate to the harm suffered by Appellant and the nature of Appellant's offenses. We do not, however, reach the same conclusion with regard to the reduction in grade to E-1.

In *Zarbatany*, the CAAF remanded the case to this court for a new review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to determine whether the circumstances of that appellant's case warranted additional sentence relief for illegal pretrial confinement or whether such relief would be disproportionate. The offenses in *Zarbatany*, much like this case, were primarily drug offenses and the appellant both in *Zarbatany* and in this case had illegal pretrial confinement credit applied against an adjudged sentence to confinement. As in this case, we found in *Zarbatany* that "granting additional relief by disapproving the punitive discharge would be disproportionate in the context of [that] case." *United States v. Zarbatany*, No. ACM 37448 (rem), 2012 CCA LEXIS 8, *5 (A.F. Ct. Crim. App. 9 Jan. 2012) (unpub. op.). We, however, also noted in *Zarbatany* that "[i]n acting on the sentence, the convening authority *referenced the credit*, [and] *disapproved the adjudged forfeiture . . . .*" *Id*. at *4 (emphasis added). In Appellant's case, the record contains no indication that either the military judge or the convening authority considered whether the excess confinement credit of 66 days should have been applied against another component of the sentence. Having considered the nature of Appellant's offenses and the harm Appellant suffered as a result of the violations of Article 13, UCMJ, we find that additional sentence relief is warranted and that setting aside the reduction to the grade of E-1 is proportionate. Therefore, in order to ensure meaningful relief for the Government's violations of Article 13, UCMJ, we modify the approved sentence by setting aside the reduction to the grade of E-1.

## B. Post -Trial Processing Errors

Appellant asserts multiple errors were made in the post-trial processing of his case "that could have impacted the convening authority's desire to grant clemency." Specifically, Appellant notes the following: (1) the staff judge advocate's recommendation (SJAR) and the attached personal data sheet (PDS) provided conflicting information regarding Appellant's pretrial confinement; (2) the SJAR misstated a reason why Appellant was awarded confinement credit for illegal pretrial confinement; (3) the PDS did not accurately reflect Appellant's overseas and combat service; and (4) the SJAR did not inform the convening authority that he must consider the matters submitted by Appellant. Appellant thus argues he has made "some colorable showing of possible prejudice" to Appellant's opportunity for clemency. Additionally, the convening authority did not explain in writing the basis for the denial of the deferment request. Assuming *arguendo* that the litany of defects listed by Appellant were plain and obvious errors, we find *no prejudice* to Appellant's opportunity for clemency in light of the set-aside of the reduction in grade to E-1.

The proper completion of post-trial processing is a question of law the court reviews de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (citing *United States v. Powell*, 49 M.J. 460, 462 (C.A.A.F. 1998)). Failure to comment in a timely manner on matters in the SJAR or matters attached to the SJAR waives in the absence of plain error, or forfeits, any later claim of error. R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). Analyzing for plain error, we assess whether "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65). "To meet this burden in the context of a post-trial recommendation error . . . an appellant must make 'some colorable showing of possible prejudice.'" *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65). "The threshold is low, but there must be some colorable showing of possible prejudice. . . . in terms of how the [error] potentially affected an appellant's opportunity for clemency." *Id.* at 437.

The sentence in Appellant's case was announced on 25 January 2017. In accordance with Article 57(a)(1)(A), UCMJ, 10 U.S.C. § 857(a)(1)(A), the adjudged sentence to reduction to the grade of E-1 became effective 14 days after the announcement of sentence. On 1 March 2017, Appellant requested the reduction in grade be deferred until action for the benefit of his wife and daughter. Appellant also highlighted the financial hardships that the improper withholding of his pay and allowances caused for him and his family. The SJAR in this case is dated 15 March 2017 and included Appellant's deferment request as an attachment. After service of the SJAR, Appellant's trial defense counsel notified the Government that the deferment request was the only requested clemency and waived the right to submit further matters prior to the convening authority's action. The SJAR informed the convening authority that the deferment request served as Appellant's clemency request, that the convening authority was obligated to act upon the deferment request, and that the SJA recommended denial.[3] Neither the convening authority's action nor any document signed by the convening authority mentioned the deferment request; thus, it was effectively denied with no written explanation. This was error.

Noting that a decision to deny a deferment request is subject to judicial review, our superior court in *United States v. Sloan*, 35 M.J. 4 (C.M.A. 1992), *rev'd on other grounds, United States v. Dinger*, 77 M.J. 447 (C.A.A.F. 2018), made clear the requirement that a convening authority reduce to writing his rationale for denial of a request for deferment of a sentence component.

---

[3] There is no addendum to the SJAR in the record of this case.

"When a convening authority acts on an accused's request for deferment of all or part of an adjudged sentence, the action must be in writing (with a copy provided to the accused) and must include the reasons upon which the action is based." *Sloan*, 35 M.J. at 7; *see* Rule for Courts-Martial (R.C.M.) 1101(c)(3). In Appellant's case, the convening authority failed to explain in writing the basis for the denial of the deferment request. For other reasons as discussed above, we set aside the reduction in grade. Thus, there is no longer a reduction in grade subject to possible deferment. As judicial review of the denied deferment is now moot, there is no need for us to address further the failure to memorialize the reason for denial. *C.f. Seeto v. Levy,* Misc. Dkt. No. 2016–15, 2017 CCA LEXIS 136 (A.F. Ct. Crim. App. 22 Feb. 2017) (unpub. op.) (the convening authority failed to identify reasons for denial of a deferment, and we vacated the denial and directed the convening authority to re-accomplish the action in accordance with Article 57a, UCMJ, 10 U.S.C. § 857a, and R.C.M. 1101(c)(3)).

In addition to the failure to document the basis for deferment denial, there were other errors in the post-trial processing of this case. In terms of how these errors potentially affected Appellant's opportunity for clemency, we note the effect of the set aside of the reduction in grade. With the reduction in grade set aside, the remaining sentence consists of a bad-conduct discharge and 180 days of confinement; neither of which the convening authority had the authority to disapprove, commute or suspend. The convening authority's discretion to provide sentence relief was limited to the reduction in grade which we have set aside. Through our set aside of the reduction in grade, Appellant has received the equivalent of the full measure of the clemency relief that was available to him from the convening authority. Thus, we conclude that the possible prejudice of post-trial processing errors to Appellant's opportunity for the clemency has been mooted.

### III. Conclusion

We **SET ASIDE** the reduction in grade to E-1. The approved findings and sentence, *as modified*, are correct in law and fact and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence, *as modified*, are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court