*388 Judge SPARKS
delivered the opinion of the Court.[1]
This matter is before us as a result of a petition for extraordinary relief filed by the Government pursuant to the All Writs Act, 28 U.S.C. § 1651(a). In its petition for extraordinary relief in the nature of a writ of prohibition, the Government asked the United States Navy-Marine Corps Court of Criminal Appeals to prohibit enforcement of an order by the military judge granting Ap-peUant/Cross-Appellee (Appellant) confinement credit pursuant to Article 13, UCMJ, 10 U.S.C. § 813 (2012). The lower court granted the Government’s writ petition in part and denied in part. Appellant then filed a writ-appeal with this Court, challenging the lower court’s jurisdiction to hear the Government’s petition for extraordinary relief, The Judge Advocate General of the Navy certified four additional issues for review by this Court.[2] We hold that the Court of Criminal Appeals had jurisdiction under the All Writs Act to entertain the Government’s petition for a writ of prohibition. We further hold that under the facts of this case, there was no intent to punish the accused by paying him as an E-l while he was performing duties as and wearing the uniform of an E-6. Thus, no violation of Article 13, UCMJ, occurred and the military judge abused his discretion in awarding confinement credit.
Background
On October 12, 2012, Appellant, then a Staff Sergeant (E-6) in the Marine Corps, was tried by a general court-martial consisting of members. Contrary to his pleas, he was convicted of violating a general regulation, rape, aggravated sexual contact, forcible sodomy, assault consummated by a battery, and adultery, in violation of Articles 92, 120, 125, 128, and 134, UCMJ, 10 U.S.C. §§ 892, 920, 925, 928, and 934. The members sentenced Appellant to a dishonorable discharge, confinement for eighteen years, forfeiture of all pay and allowances, and reduction to pay grade E-l. The convening authority approved the sentence as adjudged.
On May 22, 2014, the lower court set aside the findings and sentence and authorized a rehearing. United States v. Howell, No. NMCCA 201200264, 2015 WL 9487941, at -, 2014 CCA LEXIS 321, at *38 (N.M.Ct.Crim.App. May 22, 2014) (unpublished). The convening authority ordered the rehearing on June 25, 2014. The next day, Appellant was released from confinement, returned to full duty status, permitted to wear his pre-conviction rank insignia of E-6 and assigned commensurate duties. However, in accordance with guidance from the Defense Finance and Accounting Service (DPAS), the command determined that Appellant was to be paid as an E-l pending the rehearing results.
After referral of the charges, Appellant filed a motion, seeking, in relevant part, payment as an E-6 pending the results of the rehearing. The military judge noted that he did not have the authority to order the Government to restore Appellant to the grade of E-6 pending the rehearing. Instead, the military judge concluded that the Government’s failure to pay Appellant as an E-6 following *389 set aside of his conviction and the command’s decision to return him to full duty status amounted to illegal pretrial punishment in violation of Article 13, UCMJ. Accordingly, the military judge granted one day of confinement credit for every day from May 22, 2014, onward that Appellant was paid at the E-l rate.
Following the military judge’s ruling, the Office of the General Counsel for DFAS provided the Government with its legal opinion that Article 75(a), UCMJ, as interpreted by Dock v. United States, 46 F.3d 1083 (Fed.Cir.1995) and Combs v. United States, 50 Fed.Cl. 592 (Fed.Cl.2001), provided binding legal authority to pay Appellant at the E-l rate until the results of the rehearing were known. Based on this legal opinion, the Government filed a motion asking the military judge to reconsider the pay issue.
The military judge did not believe that the Government was acting in complete disregard of Appellant’s rights. Rather, “DFAS and the Court simply disagree on what rank [Appellant] should be paid at pending his retrial.” The military judge found that DFAS’s pay position was taken in good faith based on statutory interpretation and ease law. Nonetheless, the military judge adhered to his initial Article 13, UCMJ, determination.
At the rehearing, the members convicted Appellant, contrary to his pleas, of violating a lawful general order, abusive sexual contact, and adultery, in violation of Articles 92, 120, and 134, UCMJ, 10 U.S.C. §§ 892, 920, 934. Appellant was sentenced to a dishonorable discharge, confinement for nine years, forfeiture of all pay and allowances, and a reduction to E-l.
Prior to the convening authority’s action, the Government filed a petition for extraordinary relief in the nature of a writ of prohibition with the lower court. The Government requested that the lower court vacate the military judge’s ruling directing the convening authority to provide Appellant with Article 13, UCMJ, sentencing credit.
In United States v. Jones, No. NMCCA 201200264, 2015 WL 9487941, at *9 (N-M.Ct.Crim.App. Dec. 29, 2015),[3] a divided court, en banc, granted the writ petition in part and denied in part. The lower court agreed with the military judge that after Appellant’s first conviction was vacated and he was released from confinement and returned to full duty status, he should have been paid as an E-6 pending the results of the rehearing. The lower court found that the military judge erred only in setting the start date for the Article 13, UCMJ, credit as the date when the findings were first set aside, when instead any credit due should not have begun until the date Appellant was released from confinement. Accordingly, the Court of Criminal Appeals issued a writ of prohibition vacating the military judge’s award of confinement credit for the period from the set aside of sentence on May 22, 2014, to the last day in confinement on June 25, 2014. The petition was otherwise denied.
I.
Jurisdiction is a question of law that this Court reviews de novo. LRM v. Kastenberg, 72 M.J. 364, 367 (C.A.A.F.2013). This Court has statutory jurisdiction to review the decision of the Court of Criminal Appeals under Article 67, UCMJ, 10 U.S.C. § 867 (2012). Article 67(a)(2), UCMJ, provides that this Court shall review the record in “all cases reviewed by a Court of Criminal Appeals which the Judge Advocate General orders sent to the Court of Appeals for the Armed Forces for review.” The jurisdiction of the Courts of Criminal Appeals has generally been limited to appeals by the United States under Article 62, UCMJ, 10 U.S.C. § 862 (2012), and review of the findings and sentences of certain courts-martial under Article 66(b), UCMJ, 10 U.S.C. § 866(b) (2012).
Certified Issue I asks whether the Government may invoke Article 66, UCMJ, as the jurisdictional basis for an extraordinary writ to remedy an alleged Article 13, UCMJ, violation when the issue is not included as a basis for government appeal under Article 62, UCMJ.
*390 As an initial matter, whether Article 62, UCMJ, limits the use of the All Writs Act is not before us. Article 62 limits interlocutory appeals—“[a]n appeal that occurs before the trial court’s final ruling on the entire case.” Black’s Law Dictionary 118 (10th ed. 2014). Here, the trial court issued findings and sentence, and the military judge authenticated the record before the Government petitioned for relief. This was not, therefore, an interlocutory appeal.
The All Writs Act grants the power to “all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law.” 28 U.S.C. § 1651(a). The All Writs Act is not an independent grant of jurisdiction, nor does it expand a court’s existing statutory jurisdiction. Clinton v. Goldsmith, 526 U.S. 529, 534-35, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999). Rather, the All Writs Act requires two determinations: (1) whether the requested writ is “in aid of’ the court’s existing jurisdiction; and (2) whether the requested writ is “necessary or appropriate.” Denedo v. United States, 66 M.J. 114, 119 (C.A.A.F.2008) (internal quotation marks omitted).
Whether issuance of the requested writ was “in aid of’ the lower court’s jurisdiction
In the context of this case, writ jurisdiction under the All Writs Act is limited to those matters that are “in aid of [the Court of Criminal Appeals] respective jurisdiction[ ]” under Article 66, UCMJ. 28 U.S.C. § 1651(a). Article 66(b)(1), UCMJ, requires the Court of Criminal Appeals to review the record in each trial by court-martial “in which the sentence, as approved, extends to death, dismissal of a commissioned officer, cadet, or midshipman, dishonorable or bad-conduct discharge, or confinement for one year or more.”[4] In Article 66(e), Congress conferred upon the Court of Criminal Appeals an “awesome, plenary, de novo power of review.” United States v. Cole, 31 M.J. 270, 272 (C.M.A.1990). Under this power, the Courts of Criminal Appeals may only “affirm ... such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.” Article 66(c), UCMJ.
Jurisdiction under the All Writs Act is therefore limited to matters that “ha[ve] the potential to directly affect the findings and sentence.” Ctr. For Constitutional Rights v. United States, 72 M.J. 126, 129 (C.A.A.F.2013) (citing Hasan v. Gross, 71 M.J. 416 (C.A.A.F.2012)); see also LRM, 72 M.J. at 368. We can readily conclude that the Government’s specific complaint regarding the military judge’s ruling on confinement credit directly affects the findings and sentence. The convening authority is required “to direct application of all confinement credits for violations of Article 13 ,. against the approved sentence.” United States v. Spaustat, 57 M.J. 256, 263-64 (C.A.A.F.2002). Accordingly, we answer Certified Question I in the affirmative and deny Appellant’s writ-appeal petition for review.
Whether issuance of the writ was “necessary and appropriate”
A writ of prohibition, like mandamus, is a “drastic instrument which should be invoked only in truly extraordinary situations.” United States v. Labella, 15 M.J. 228, 229 (C.M.A.1983). To prevail, the petitioner must show that: “(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances.” Hasan, 71 M.J. at 418 (citing Cheney v. United States Dist. Court for D.C., 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004)). With these principles in mind, we will establish the necessity and appropriateness of the Govem *391 ment’s writ of prohibition as we proceed through our analysis of the remaining certified questions.
II.
Certified Issue II asks whether the military judge, in finding an Article 13, UCMJ, violation, exceeded his authority by not following Article III courts’ holdings that Appellant was only entitled to be paid as an E-l pending the results of the rehearing.
Determining whether the Government’s action of not paying Appellant as an E-6 pending the results of the rehearing amounted to an Article 13, UCMJ, violation is properly within the jurisdiction of the military courts, as well as this Court. This determination necessarily requires interpretation of Article 75(a), UCMJ, 10 U.S.C. § 875(a) (2012), and how this article applies when courtimartial findings and sentences have been set aside by an appellate court. This is the sort of issue for which the military court ought not to defer to an Article III court’s interpretation.
Article 75(a), UCMJ, provides:
Under such regulations as the President may prescribe, all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved, except an executed dismissal or discharge, shall be restored unless a new trial or rehearing is ordered and such executed part is included in a sentence imposed upon the new trial or reheating.
In Dock, the United States Court of Appeals for the Federal Circuit concluded that Article 75(a), UCMJ:
[Plainly requires that, with two exceptions, if a member’s court-martial sentence is set aside or disapproved, all rights, privileges, and property are to be restored to the member. The first exception is that a set-aside or disapproved sentence does not undo an already executed dismissal or discharge. The second exception, controlling here, is that if a rehearing is ordered, and the member is resentenced, then only that part of the executed first sentence that is not included in the second sentence shall be restored to the member.
46 F.3d at 1087. Relying upon Dock, the United States Court of Federal Claims held in Combs that when a new trial is conducted, entitlement to restoration of pay is dependent upon the outcome of the new trial. 50 Fed.Cl. at 600.
In reliance upon these holdings, the Government, based on guidance received from DFAS, took a wait-and-see approach to restoring Appellant’s pay grade until after the results of the rehearing were known. We acknowledge that this position is not an inherently unreasonable interpretation of Article 75(a), UCMJ. However, under the facts of this case, we disagree with this interpretation.
As we stated in Keys v. Cole, 31 M.J. 228 (C.M.A.1990):
It is clear to us that the unambiguous language of [Article 75(a), UCMJ] implies that, if a new trial or rehearing is ordered, as in this case, all property—-i.e. forfeitures—will not be restored until that rehearing is held. Again, of course, this provision would not entitle the United States to continue in the interim to withhold pay otherwise dm by relying on the forfeiture element of a set-aside sentence. However, it does quite clearly entitle the United States to retain pay already withheld prior to the sentence being set aside, until such time as either a decision is made not to hold a rehearing or a rehearing is held.
Id. at 232 (second emphasis added) (citation omitted).
The Government is within its statutory rights to not restore to an accused any forfeiture of pay and allowances he has already suffered as a result of the original conviction and sentence until after the rehearing is completed. But, Article 75(a), UCMJ, does not provide for the withholding of pay during the interim period after the findings and sentence are set aside, and the accused is returned to full duty status and his previous rank.
*392 Historically, we have found that after a new trial is ordered, no vestiges of the former court-martial should linger, as:
“An order granting a new trial reopens the whole case, which then stands for trial de novo, and places the accused in the same position as if no trial had been had.” 24 CJS, Criminal Law, § 1511. As stated in Salisbury v. Grimes, 223 Ga. 776, 158 S.E.2d 412 (1967), the grant of a new trial “wiped the slate clean as if no previous conviction and sentence had existed.” See also Manor v. Barry, 62 Ariz. 122, 154 P.2d 374 (1944), and 39 Am Jur, New Trial, § 204, wherein it is declared:
“An order directing a new trial has the effect of vacating the proceedings and leaving the case as though no trial had been had.”
Johnson v. United States, 19 C.M.A 407, 408, 42 C.M.R. 9, 10 (1970).
Under this longstanding interpretation of what a rehearing entails, if an accused is released from confinement awaiting rehearing, his pay status—at least insofar as the Uniform Code of Military Justice is concerned—should be the same as if he had never been tried in the first instance.
The problem with the Federal Circuit’s analysis of Article 75(a), UCMJ, is that, as with all appellate courts, review of the issue is necessarily retrospective. In other words, both conditions contained in the statutory provision will have been satisfied. First, the convening authority will have ordered a rehearing and secondly, the results of the rehearing will have been adjudged. However, if the perspective is shifted to the point at which the convening authority receives the decision of the appellate court setting aside the findings and/or the sentence, the logic of our approach becomes more evident. Upon receipt of the decision, the convening authority has a number of options before him or her. The decision might be made to simply forego a rehearing and return the accused to duty. Alternatively it might be decided that the accused should be administratively separated rather than retried. However, if a hearing is ordered and the accused is not confined, it makes perfectly good sense to restore the accused fully, including his preconviction pay grade, until the results of the hearing are known. Often, it takes some time before a rehearing is concluded. For an accused returned to full duty, the longer it takes, the greater the possibility the accused may suffer an unnecessary hardship, particularly if the accused was previously a senior noncom-missioned officer. Although the record does not disclose a particular hardship in this case, it does reveal a lengthy gap between when the rehearing was ordered on June 25, 2014, and when it ultimately concluded on April 29,2015.
The military judge, under the facts of this case, did not clearly and indisputably err in not following the Article III courts’ interpretation of Article 75(a), UCMJ.[5] Accordingly, we answer Certified Issue II in the negative.
III.
Certified issue III asks whether the lower court erred in concluding that the setting aside of the findings and sentence rendered unexecuted the portion of Appellant’s sentence reducing his pay grade to E-l pending rehearing. We conclude that this certified issue rests on an incorrect premise—namely, that the lower court found Appellant’s sentence unexecuted after it was set aside. The Court of Criminal Appeals decision never stated that a set-aside sentence becomes “unexecuted.” Rather, the lower court concluded: “Once a court-martial sentence is set aside and thus invalidated, the Government can no longer execute it.” Jones, 2015 CCA LEXIS 573, at *15, 2015 WL 9487941, at *5. The Court of Criminal Appeals correctly reached this determination *393 because, as discussed in Certified Issue II, Appellant’s set-aside sentence was no longer enforceable pending a rehearing. See United States v. Von Bergen, 67 M.J. 290, 294 (C.A.A.F.2009) (“‘[T]he effect of ordering a rehearing is ... to place the United States and the accused in the same position as they were at the beginning of the original trial.’ ” (alteration in original) (quoting United States v. Staten, 21 C.M.A 493, 495, 45 C.M.R. 267, 269 (1972))). Accordingly, we answer Certified Issue III in the negative.
IV.
Certified Issue IV asks whether the Government’s action of paying Appellant at the E-l rate pending his rehearing constituted illegal pretrial punishment, in violation of Article 13, UCMJ,. in the absence of any punitive intent. We answer this certified issue in the negative.
Article 13, UCMJ, provides:
No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.
In United States v. Palmiter, 20 M.J. 90 (C.M.A.1985), we set out the process for evaluating alleged Article 13, UCMJ, violations:
[T]he question of whether particular conditions amount to punishment before trial is a matter of intent, which is determined by examining the purposes served by the restriction or condition, and whether such purposes are “reasonably related to a legitimate governmental objective.”
[I]n the absence of a showing of intent to punish, a court must look to see if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective,
Id. at 95 (quoting Bell v. Wolfish, 441 U.S. 520, 539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Therefore, the following pertinent questions arise relevant to the facts of this case:
1. Did the Government intend to punish Appellant by paying him as an E-l pending the rehearing?
2. If there was no punitive intent, did the Government’s interpretation of Article 75(a), UCMJ, further a legitimate non-punitive governmental objective?
Unlike the situation we faced in United States v. Combs, 47 M.J. 330 (C.A.A.F.1997),[6] here the record is clear that there was no punitive intent behind the Government’s decision to pay Appellant as an E-l pending the rehearing results. The military judge explicitly found that the Government had not acted in complete disregard of the accused’s rights. He also found that DFAS had taken a good-faith position it believed was supported by regulations, statutes, and case law interpreting Article 75(a), UCMJ, in concluding that there was no authority to pay Appellant at his former pay grade pending the results of the rehearing. As discussed above, we disagree with the Government’s interpretation of Article 75(a), UCMJ. Nonetheless, there was a legitimate debate on the proper interpretation of Article 75(a), UCMJ, and disbursements to accused persons pending rehearings. From the record before us, we have no question that the Government legitimately believed that Appellant was not entitled to be paid as an E-6 pending the results of his rehearing. Accordingly, we conclude that there was no intent to punish Appellant by the Government’s decision to pay him at the E-l rate pending the results of his rehearing.
We address briefly Appellant’s contention that even if there was no intent by the Government to punish, the Government’s action of paying him at the E-l rate still had a punitive effect. To the extent that any dicta in United States v. Fischer, 61 M.J. 415, 420- *394 22 (C.A.A.F.2005), suggests that such an effect is sufficient to trigger an Article 13, UCMJ, violation, we reject that view. The record must disclose an intent to punish on the part of the Government.
Irrespective of any intent to punish, Article 13, UCMJ, is violated if the activity at issue serves no legitimate, nonpunitive purpose. The Government’s interpretation of Article 75(a), UCMJ, was in furtherance of a legitimate, nonpunitive governmental objective to provide an accused pending rehearing with the proper pay entitlement as prescribed by Congress. For these reasons, we hold that there was no Article 13, UCMJ, violation.
Conclusion
Having concluded that issuance of the Government’s writ of prohibition was in aid of the lower court’s jurisdiction, we hold that the Government has shown a clear and indisputable right to the issuance of the writ. Here, the military judge exceeded his authority by applying confinement credit to remedy conduct that did not violate Article 13, UCMJ. We further hold that there is no other adequate means for the Government to obtain relief and that issuance of the writ is both appropriate and necessary under the circumstances.
Decision
Appellant’s writ-appeal petition is denied. Certified Question I is answered in the affirmative. Certified Questions II, III, and IV are answered in the negative. Accordingly, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for review of the petition for extraordinary relief consistent with this opinion.

. Senior Judge Royce C. Lamberth, of the United States District Court for the District of Columbia, sat by designation pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

. The Judge Advocate General of the Navy certified the case for review of four issues:
I. Whether the Government may invoice Article 66, UCMJ, as the jurisdictional basis for an extraordinary writ pursuant to the All Writs Act when the issue is not included as a basis for Government appeal under Article 62, UCMJ?
II. Whether the military judge, in finding an Article 13, UCMJ, violation, exceeded his authority by rejecting applicable holdings of the U.S. Court of Appeals for the Federal Circuit and the Court of Federal Claims, in order to conclude that [Appellant] was entitled to pay at the E-6 rate pending his rehearing?
III. Whether the lower court erred by concluding that the setting aside of [Appellant's] findings and sentence rendered his reduction to pay grade E-l prospectively unexecuted pending rehearing? "
IV. If a member's original sentence includes an executed reduction to pay grade E-l and the sentence is subsequently set aside, does' the action of paying that member at the E-l rate pending rehearing constitute illegal pretrial punishment in the absence of any punitive intent?

. Howell is the real party in interest in Jones.

. Although the convening authority has not yet approved the sentence, the doctrine of potential jurisdiction allows appellate courts to issue opinions in matters that may reach the actual jurisdiction of the court. See FTC v. Dean Foods Co., 384 U.S. 597, 603 (1966) (the power to issue writs "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected").

. We are cognizant of the fact that our conclusions are at odds with those of the Federal Circuit and .the Court of Federal Claims. We do, however, feel that it is important to express our view with the hope that Congress and the President will clarify this aspect of Article 75(a), UCMJ. See generally Military Justice Review Group, Dep't of Defense, Report of the Military Justice Review Group Part I: UCMJ Recommendations 657 (2015) (recommending that Article 75, UCMJ, be amended to require the President to establish rules governing the eligibility for pay and allowances during the period after a court-martial sentence is set aside or disapproved).

. Following this decision, the appellant pursued a back pay claim in the United States Court of Federal Claims in Combs, 50 Fed.Cl. 592.